**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 26, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 03-40927

)))))))))))))))))))))))))))

ROBERT F. CALDWELL,

Petitioner-Appellant,

vs.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

)))))))))))))))))))))))))))

No. 03-20900

)))))))))))))))))))))))))))

PETE RONALD MARTINEZ,

Petitioner-Appellant,

vs.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

))))))))))))))))))))))))))

No. 04-10062

))))))))))))))))))))))))))

DAVID FRANKLIN BECK,

Petitioner–Appellant,

vs.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

The issue in this case is whether orders of deferred adjudication community supervision[1] and straight probation are final judgments for purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") one-year statute of limitations.[2]  This is a question of first impression in this circuit.  We hold that orders of deferred adjudication and straight probation are final judgments for purposes of AEDPA's one-year statute of limitations.  For the reasons that follow, we

---

[1] Throughout this opinion, the term "probation" is used interchangeably with the term "community supervision."

[2] 28 U.S.C. § 2244(d)(1).

affirm the judgments of the district courts.

I

The district courts dismissed Petitioners-Appellants' habeas corpus petitions on procedural grounds. Thus, only the procedural posture of the three cases are relevant to the question before us.

*A. Robert Franklin Caldwell*

Robert Franklin Caldwell was indicted for the felony offense of aggravated assault. He pleaded guilty to the charges, and on June 17, 1998, the state trial court placed Caldwell on ten years of deferred adjudication probation. An order of deferred adjudication, by definition, defers an adjudication of guilt or innocence. Pursuant to the order of deferred adjudication, Caldwell was placed on probation for a period of ten years. Caldwell did not seek direct review of the deferred adjudication order.

Caldwell subsequently violated the terms of his probation, and on April 28, 2000, the state trial court revoked his probation. Pursuant to his earlier guilty plea, the state trial court issued a judgment finding Caldwell guilty of aggravated assault. Caldwell was sentenced to twenty-five years in prison. He timely appealed to the court of appeals, which dismissed the portion of his appeal regarding the state trial court's judgment to proceed with adjudication for lack of jurisdiction. The court

3

of appeals affirmed the remainder of the judgment, issuing a mandate in November of 2001.[3]

Caldwell filed his second[4] state application for habeas corpus relief challenging his conviction in February 2002. The Texas Court of Criminal Appeals denied habeas relief without written order. On September 5, 2002, Caldwell filed a petition for federal habeas relief. The magistrate judge found that AEDPA's one-year statute of limitations had began to run on July 17, 1998, thirty days after the trial judge entered the order of deferred adjudication community supervision, and expired on July 17, 1999. The district court adopted the magistrate judge's report and recommendation and dismissed Caldwell's petition as untimely.

Caldwell timely filed a notice of appeal. The district court granted Caldwell a certificate of appealability to this court on whether the district court erred in determining that all issues relating to Caldwell's guilty plea and the deferred

---

[3] A decision becomes final thirty days from the date the judgment is issued, where thirty days is the period for filing a petition for discretionary review in state court. "[T]he issuance of the mandate by the state court of appeals is of no consequence for the purposes of § 2244(d)(1)(A)." *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003).

[4] Caldwell filed his first state application for habeas corpus relief on June 22, 2000. On August 16, 2000, the Texas Court of Criminal Appeals dismissed his first habeas application due to the fact that his direct appeal was still pending. This state application would have tolled the one-year statute of limitations period had it been filed prior to its expiration.

4

adjudication community supervision became final thirty days after the order was imposed, rather than thirty days after the formal adjudication of guilt.

### B. Pete Ronald Martinez

Pete Ronald Martinez was indicted for the felony offense of aggravated robbery. He pleaded guilty to aggravated robbery with a deadly weapon on January 22, 1998. The state trial court found sufficient evidence substantiating Martinez's guilt and placed him on ten years deferred adjudication community supervision. Martinez violated the terms of his community supervision, and on August 28, 2000, the state trial court adjudicated Martinez guilty pursuant to his earlier guilty plea. The state trial court sentenced him to forty-five years imprisonment.

Martinez filed a motion for a new trial in September 2000. The trial court denied the motion for a new trial, and Martinez appealed, complaining of the effectiveness of his attorney at the original plea hearing. The court of appeals dismissed the appeal in October 2001 for lack of jurisdiction, reasoning that Martinez's ineffective assistance claim had to be raised in an appeal from the imposition of deferred adjudication probation.[5]

Martinez filed a state writ of habeas corpus in July 2002. The Texas Court of Criminal appeals denied the application without written order. Martinez filed his federal writ petition

---

[5] *See* discussion Part II.A *infra*.

on December 5, 2002, raising issues relating to his guilty plea. Unlike the magistrate judge's determination in Caldwell's case, the federal district court concluded that AEDPA's one-year statute of limitations began to run from the judgment adjudicating guilt, entered after the trial court revoked Martinez's deferred adjudication community supervision. Thus, according to the district court's order, the AEDPA one-year limitations period began to run thirty days after the assessment of the forty-five year sentence. However, the district court found that Martinez's petition was nevertheless time-barred since it concluded that Martinez's state court application for habeas relief did not toll AEDPA's statute of limitations.[6]

Martinez timely filed his notice of appeal. The district court granted Martinez a certificate of appealability on whether his conviction became final after the expiration of the time for appealing his guilty plea and the deferred adjudication, or if his conviction became final after the expiration of time for appealing the state court's judgment adjudicating guilt.

_____

[6] Because under the district court's order, Martinez's federal habeas petition would have been time barred regardless of when AEDPA's statute of limitations began to run, respondent argues that Martinez's claim is moot. However, in *Foreman v. Dretke*, we held that a timely appeal to state court, dismissed for want of jurisdiction, tolls AEDPA's statute of limitations. 383 F.3d 336, 340 (5th Cir. 2004). Therefore, whether the statute of limitations began to run at the time the order deferring adjudication was issued or at the time Martinez's guilt was adjudicated is outcome determinative in Martinez's case.

6

## C. David Franklin Beck

David Franklin Beck was charged with sexual assault of a child. Beck pleaded not guilty but was convicted by a jury. Pursuant to the jury's recommendation, the trial court sentenced Beck to ten years community supervision on February 23, 2000. In February 2001 the court of appeals affirmed Beck's conviction.

Beck violated the terms of his probation, and in May of 2001, the state moved to revoke Beck's probation. The trial court revoked Beck's probation on June 29, 2001 and sentenced him to ten years confinement. Beck gave timely notice of appeal from the judgment revoking his community supervision but withdrew the notice of appeal in early March 2002.

Subsequently, on March 12, 2002, Beck filed an application for state habeas relief, pursuant to article 11.07 of the Texas Code of Criminal Procedure. The Texas Court of Criminal Appeals denied Beck's application for writ of habeas corpus without written order in August 2002. Beck filed a petition for writ of habeas corpus in federal district court on October 8, 2002. In June 2003, the magistrate judge recommended that Beck's petition be denied as barred by the limitations period. The magistrate judge agreed with the State that Beck's conviction became final on March 9, 2001, the date on which the time to file a petition for discretionary review in the Texas Court of Criminal Appeals expired. According to the magistrate judge, AEDPA's statute of

7

limitations period expired on March 9, 2002, three days before Beck filed his state habeas application.  The district court adopted the findings and recommendation of the magistrate judge.

Beck gave timely notice of appeal from the judgment entered by the district court.  The district court granted a certificate of appealability to Beck on the issue of when a conviction and imposition of a probationary sentence, which is subsequently revoked, is final for purposes of AEDPA's one-year statute of limitations period.

II

We review a district court's denial of a habeas application on procedural grounds *de novo*.  *Larry v. Dretke*, 361 F.3d 890, 893 (5th Cir. 2004); *Emerson v. Johnson*, 243 F.3d 931, 932 (5th Cir. 2001).

AEDPA procedure governs these cases because each habeas petition was filed pursuant to 28 U.S.C. § 2254, after AEDPA's effective date.[7]  *Hughes v. Dretke*, 412 F.3d 582, 588 (5th Cir. 2005).  AEDPA requires that "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court" be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. §

---

[7] AEDPA became effective on April 24, 1996.  *See Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005).

8

2244(d)(1).

In the case of Petitioners Caldwell and Martinez, the issue is whether an order of deferred adjudication following a guilty plea is a final judgment upon the expiration of the time for seeking direct review, for purposes of section 2244, when the applicant only challenges issues pertaining to his guilt. If an order of deferred adjudication is a final judgment for this purpose, then Petitioners' habeas petitions are untimely because they were filed more than one year after the orders of deferred adjudication issued. If an order of deferred adjudication is not a final judgment for purposes of section 2244, however, then the judgment adjudicating guilt triggered the statute of limitations, and Petitioners' habeas applications are timely.

In Petitioner Beck's case, the issue is whether a judgment entered pursuant to a guilty verdict that results in community supervision is a final judgment upon the expiration of the time for seeking direct review, for purposes of section 2244, when the applicant only challenges issues pertaining to his guilt. If an order imposing straight community supervision is final for purposes of section 2244, then Beck's habeas petition is untimely. However, if an order imposing community supervision is not a final judgment for these purposes, then the statute of limitations began to run when Beck's probation was revoked. In that case, his habeas petition is timely.

The district courts within the Fifth Circuit are split as to

9

whether an order of deferred adjudication constitutes a final

judgment for purposes of section 2244. *See Wilkinson v.*

*Cockrell*, 240 F. Supp. 2d 617, 620-22 (N.D. Tex. 2002). Many

have concluded that an order of deferred adjudication is not a

final judgment and therefore does not trigger AEDPA's statute of

limitations. These courts have held that the judgment

adjudicating guilt is the relevant state-court judgment for

purposes of 28 U.S.C. § 2244(d)(1). In those instances, the

courts have reasoned that either (1) an order of deferred

adjudication is not a final judgment because it is not a

judgment; or (2) an order of deferred adjudication is not a final

conviction because there has been no adjudication of guilt.[8] By

contrast, some district courts have held that an order of

---

[8] *See, e.g.*, *Samford v.* Dretke, No. 3:03-CV-1969-M, 2005 WL
1017872, at *2 (N.D. Tex. Apr. 27, 2005) (holding that the trial
court's Deferred Adjudication Order was not a judgment under
Texas law, but merely an appealable order); *Daugherty v. Dretke*,
No. 3:01-CV-0202-N, 2003 WL 23193260, at *6-8 (N.D. Tex. Dec. 24,
2003)(finding that an order of deferred adjudication is not a
judgment for purposes of 28 U.S.C. § 2244(d)); *Standridge v.
Cockrell*, No. 4:02-CV-462-Y, 2002 WL 31045977, at *3 (N.D. Tex.
Sept. 10, 2002)(stating that placement on deferred adjudication
probation is not a final conviction because there has been no
adjudication of guilt); *Jamme v. Cockrell*, No. 3:01-CV-1370-L,
2002 WL 1878403, at *2-3 (N.D. Tex. Aug. 12, 2002) (holding that
deferred adjudication probation is not a final judgment for
purposes of 28 U.S.C. § 2244); *Cutrer v. Cockrell*, No.
3:01-CV-0841-D, 2002 WL 1398558, at *2-5 (N.D. Tex. June 26,
2002) (finding that an order of deferred adjudication probation
is not a judgment within the meaning of 28 U.S.C. § 2244 or state
law).

deferred adjudication or straight probation[9] is a final judgment that triggers the running of the statute of limitations under section 2244.[10]

*A. Is an order of deferred adjudication a judgment for purposes of section 2244?*

First, we address whether an order deferring adjudication community supervision is a judgment for purposes of section 2244. Petitioners Caldwell and Martinez contend that we should look to Texas state law to determine the meaning of the term "judgment" in section 2244. According to Texas state law, "A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant." TEX. CRIM. PROC. CODE ANN. art. 42.01.[11] Therefore,

---

[9] A judgment of straight probation, as in Petitioner Beck's case, is a "judgment" under both federal and Texas state law since there is a formal adjudication of guilt. *See* discussion Part II.A *infra*. However, Beck argues that an order of probation is not final for purposes of section 2244(d)(1).

[10] *See Wilkinson*, 240 F. Supp. 2d at 621-22("There is no requirement in § 2244(d)(1)(A) that the final judgment contemplated by the statute be one that makes a determination of guilt."); *Jiminez v. Cockrell*, No. 4:03-CV-0090-Y, 2003 WL 21321256, at *4 (N.D. Tex. May 19, 2003)(holding that "the statute of limitations begins for purposes of § 2244(d)(1)(A) when a Texas state court deferred adjudication order becomes final by the conclusion of direct review or the expiration of the time for seeking such review, notwithstanding the fact that there has been no determination of guilt."); *DeLeon v. Cockrell*, No. 5:01-CV-231-C, 200 U.S. Dist. LEXIS 10612, at *4 (N.D. Tex. June 12, 2002)(stating petitioner's conviction became final thirty days after he was sentenced and placed on probation).

[11] The portions of this statute discussed are those prior to the amendments effective on September 1, 2005.

among other "typical trappings of a Texas judgment,"[12] a final judgment must contain a conviction or acquittal of the defendant. *Id.* Caldwell and Martinez argue that because a deferred adjudication, by definition, defers an adjudication of guilt or innocence, such an order is not a judgment under Texas law,[13] and consequently should not be a judgment under section 2244.

The plain language of AEDPA, as well as its underlying purpose, lead us to disagree. In interpreting AEDPA, our task is to construe what Congress has enacted, beginning with the language of the statute. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). It is an elementary canon of statutory construction that we must give a term consistent meaning throughout an act. *Morse v. Republican Party*, 517 U.S. 186, 249-50 (1996). In interpreting the term "judgment," we observe that the term should be construed, if possible, consistently throughout AEDPA. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995).

Petitioners' interpretation of the phrase "person in custody pursuant to the judgment of a State court" would result in two

---

[12] *Cutrer*, 2002 WL 1398558, at *3. Features of a Texas judgment also include a section addressing the proper punishment, the term of sentence, the date the judgment was entered, the date the sentence was imposed, etc. *See* TEX. CRIM. PROC. CODE ANN. art. 42.01; *Cutrer*, 2002 WL 1398558, at *3.

[13] "The whole point of [the deferred adjudication] statute is to avoid having to formally adjudicate the defendant's guilt unless and until he demonstrates that he cannot abide by the terms of probation set by the court." *Ex parte Laday*, 594 S.W.2d 102, 104 (Tex. Crim. App. 1980).

12

different meanings within AEDPA. *See Shelby v. Bartlett*, 391
F.3d 1061, 1064 9th Cir. 2004). Section 2254 of AEDPA confers
jurisdiction on federal courts to hear habeas petitions by those
"in custody pursuant to the judgment of a State court."[14]
Therefore, a person, like the Petitioners, who wishes to bring a
habeas petition pursuant to section 2254 in federal court, must
be in custody pursuant to the *judgment* of a state court.  Like
section 2254, section 2244(d)(1) of AEDPA imposes a one-year
statute of limitations on an application for writ of habeas
corpus by a "person in custody pursuant to the judgment of a
State court."   If as Petitioners suggest, an order deferring
adjudication is not a judgment pursuant to a state court for
purposes of section 2244, then a habeas petition under AEDPA
section 2254 would be brought by a "person in custody pursuant to
the judgment of a State court" for purposes of habeas
jurisdiction, but would not be brought by a "person in custody
pursuant to the judgment of a State court" for purposes of
AEDPA's limitation period.[15]  *See id.; Kimbrell v. Cockrell*, 311

---

[14] *See* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice
thereof, a circuit judge, or a district court shall entertain an
application for a writ of habeas corpus in behalf of a person in
custody pursuant to the judgment of a State court.").

[15] Petitioners do not argue that there is no federal habeas
jurisdiction to hear petitions brought by those challenging
custody pursuant to an order deferring adjudication before guilt
has been adjudicated.  In such a situation, there is jurisdiction
under section 2254. *See, e.g.*, *Sawyer v. Sandstrom*, 615 F.2d
311, 313 n.1 (5th Cir. 1980)(stating that a petitioner whose

F.3d 361, 363 (5th Cir. 2002).  This inconsistency implies that Petitioners are incorrect, and an order deferring adjudication is a judgment for purposes of triggering AEDPA's limitation period.

Although an order of deferred adjudication is not a judgment under Texas law, it is a judgment under the relevant federal law. The Federal Rules of Civil Procedure explicitly state that they are applicable to habeas corpus proceedings. FED. R. CIV. P. 81.[16] In addition, the Rules Governing Section 2254 Cases, Rule 11, states that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  The Federal Rules of Civil Procedure define "judgment" as including "a decree or any order from which an appeal lies."  FED. R. CIV. P. 54; *see also* BLACK'S LAW DICTIONARY (8th ed. 2004)("The term *judgment* includes an equitable decree

---

sentence had been stayed was eligible for federal habeas relief); *Barry v. Bergen County Probation Dept.*, 128 F.3d 152, 159-61 (3d Cir. 1997)(holding that petitioner sentenced to 500 hours of community service was eligible to petition for habeas relief); *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (stating petitioner on probation eligible for habeas relief under section 2254(a)).

[16]     These rules are applicable to proceedings for admission to citizenship, habeas corpus, and quo warranto, to the extent that the practice in such proceedings is not set forth in statutes of the United States, the Rules Governing Section 2254, or the Rules governing Section 2255 Proceedings, and has heretofore conformed to the practice in civil actions.

FED. R. CIV. P. 81.

and any order from which an appeal lies.").

An appeal lies from both an order of deferred adjudication and an order of straight probation. In *Manuel v. State*, the Texas Court of Criminal appeals held that a defendant placed on deferred adjudication community supervision, like defendants placed on regular community supervision, may appeal issues relating to the original plea proceedings when the deferred adjudication community supervision is first imposed. 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). In fact, the *Manuel* court stated that a defendant on regular or deferred community supervision may *only* appeal issues relating to the original plea proceedings when deferred adjudication community supervision is originally imposed. *Id.* ("We have long held that a defendant placed on 'regular' community supervision may raise issues relating to the conviction, such as evidentiary sufficiency, only in appeals taken when community supervision is originally imposed. . . . we now hold that this rule also applies in the deferred adjudication context."). Thus, according to the plain meaning of the word "judgment," an order of deferred adjudication community supervision, in addition to an order of straight or regular community supervision, is a judgment for purposes of section 2244.

This result is consistent with Congress's stated legislative intent in enacting AEDPA. The Committee of Conference explained

that the intent of the habeas corpus reforms was to "curb the abuse of the statutory writ of habeas corpus," and "address problems of unnecessary delay." H.R. CONF. REP. NO. 104-518, at 111 (1996). Permitting a petitioner to bring a habeas corpus petition challenging an order of probation as many as ten years after he was originally placed on probation would be contrary to congressional intent.[17] The Supreme Court has recognized that "AEDPA's purpose [is] to further the principles of comity, finality, and federalism." *Williams v. Taylor*, 529 U.S. 420, 436 (2000); *Duncan v. Walker*, 533 U.S. 167, 178 (2001). Section 2244(d)(1) "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." *Duncan*, 535 U.S. at 179. The result we reach today is consistent with this purpose.

*B. Is a judgment of deferred adjudication or straight probation final for purposes of section 2244?*

Second, we address whether an order of deferred adjudication or straight probation is a final judgment for purposes of section 2244. We conclude that it is. In *Roberts v. Cockrell*, we held that federal law controls when a state conviction becomes final for purposes of section 2244(d)(1)(A). 319 F.3d 690, 694 (5th

---

[17] Texas law permits a judge to impose deferred adjudication community supervision for up to ten years in a felony case. TEX. CRIM. PROC. CODE ANN. art. 42.12 § 5(a).

16

Cir. 2003). We stated that "although we are sensitive to state law when determining whether a motion is still pending, federal law still determines the time limits under AEDPA." *Id.* at 693 (internal quotations omitted); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 262 (5th Cir. 2002) (stating that federal law determines the time limits under AEDPA); *Foreman*, 383 F.3d at 339 ("Texas rules [do] not control AEDPA reivew."). We noted that the language of section 2244(d)(1)(A) provides that a decision becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." *Id.*

Petitioner Beck argues, however, that his conviction was not final under state law until his probation was revoked and his appeal from the revocation was dismissed. Beck contends that according to article 11.07 of the Texas Code of Criminal Procedure, he was not eligible under state law to collaterally attack his conviction until the felony judgment, from which he was seeking relief, was final under Texas law.[18] Thus, Beck maintains that he was unable to exhaust state remedies until his probation was revoked and his conviction became final under state law.[19] As the argument goes, an order imposing probation cannot

_____

[18] Habeas relief under article 11.07 requires a final conviction. Under Texas law, probation is not a final conviction for these purposes. *See Ex parte* Renier, 734 S.W.2d 349, 351 (Tex. Crim. App. 1987).

[19] 28 U.S.C. § 2254(b)(1) states that "An application for a writ of habeas corpus on behalf of a prisoner in custody pursuant

17

be final for purposes of section 2244 since, in that instance, state law precluded Beck from achieving the prerequisite requirements to bringing a federal habeas petition within the federal statute of limitations.

However, although Beck could not pursue collateral review under article 11.07, he had an available remedy for habeas relief under Texas Code of Criminal Procedure articles 11.05, 11.08, and 11.23. *See Ex parte* Twyman, 716 S.W.2d 951, 952 (Tex. Crim. App. 1986); *Ex parte* Martell, 901 S.W.2d 754, 754 (Tex. Crim. App. 1995). Thus, while on probation, Beck was entitled to collaterally challenge any allegedly unlawful restraint in the trial court where he was convicted. *Twyman*, 716 S.W.2d at 952. We conclude that, while on probation, Beck was able to exhaust state remedies before AEDPA's limitations period expired. Therefore, we see no reason to depart from the definition of finality provided in section 224(d)(1)(A).[20] The judgment imposing his probation became final by the conclusion of direct review or the expiration of the time for seeking such review.

---

to the judgment of a State court shall not be granted unless it appears that-the applicant has exhausted the remedies available in the courts of the State."

[20] In *Salinas v. Dretke*, we held that state law controls whether an out-of-time petition for discretionary review is part of Texas's direct or collateral review process. 354 F.3d 425, 430-31 (5th Cir. 2004). However, in that case, we explicitly stated that we must look to federal law to determine the date an event has occurred, such as the date a judgment becomes final. *Id.* at 430 n.5.

III

Petitioner Caldwell was sentenced to ten years deferred adjudication probation on June 17, 1998. Caldwell did not seek review of the deferred adjudication order. Under Texas law, a defendant must file a notice of appeal "within 30 days after the day sentence is imposed or suspended in open court." TEX. R. APP. P. 26.2(a)(1). Thus, Caldwell's deferred adjudication became final for purposes of section 2244(d)(1)(A) on July 17, 1998, and the statute of limitations began to run on that date. Petitioner Martinez was placed on community supervision by an order deferring adjudication of guilt on January 22, 1998. This order became final on February 23, 1998.[21] Therefore, the statute of limitations set forth in section 2244 began to run on that date.

Finally, Petitioner Beck was placed on community supervision on February 23, 2000. Beck appealed his conviction, and on February 7, 2001, the court of appeals affirmed his conviction. Beck did not seek a rehearing with the court of appeals or file a petition for discretionary review with the Texas Court of Criminal Appeals. Therefore, under the federal definition of finality, Beck's conviction became final on March 9, 2001[22] for

---

[21] January 22, 1998, thirty days from January 22, 1998, fell on Saturday, February 21, 1998. Thus, Petitioner's conviction became final the following Monday, February 23, 1998.

[22] *See* TEX. R. APP. P. 68.2(a) ("The petition [to the Texas Court of Criminal Appeals] must be filed within 30 days after either the day the court of appeals' judgment was rendered or the day the last timely motion for rehearing was overruled by the

19

purposes of AEDPA.[23] *Cockrell*, 319 F.3d at 694.

IV

Because an order of deferred adjudication community supervision is a final judgment within the plain meaning of AEDPA section 2244, the one-year statute of limitations, for challenging substantive issues of the orders of deferred adjudication, began to run when the order deferring adjudication became final.[24] Similarly, because a judgment imposing probation is a final judgment within the plain meaning of AEDPA section 2244, the one-year statute of limitations for challenging substantive issues relating to a judgment of jury verdict of

_____

court of appeals.").

[23] Beck asks this court to equitably toll AEDPA's statute of limitations. The respondent argues that a certificate of appealability was not issued on this question. We find that with respect to Petitioner Beck, the issue of equitable tolling is fairly incorporated in the question before this court. We review a decision to invoke equitable tolling for abuse of discretion. *U.S. v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002). We have recognized that the one-year statute of limitations period of section 2244(d)(1) may be equitably tolled. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). However, equitable tolling is permitted only "in rare and exceptional circumstances." *Id*. Equitable tolling will not be granted if an applicant failed to diligently pursue his rights. *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004). Although "we must be cautious not to apply the statute of limitations too harshly," here, there are no exceptional circumstances. *U.S. v. Patterson*, 211 F.3d 927, 931 (5th Cir. 2000). Beck simply failed to challenge any unlawful restraint in the trial court where he was convicted within the prescribed time period.

[24] Our holding is limited to instances where a petitioner challenges substantive issues relating to an original order of deferred adjudication probation or straight probation.

20

guilt and probation, began to run when the judgment imposing probation became final.  Consequently, each Petitioner's habeas corpus petition is time-barred.

V

We affirm the judgments of the district courts.

21

DeMOSS, dissenting in part:

With all due respect for the majority, I cannot join the majority opinion in its entirety.

As indicated in the majority opinion, these three separate appeals are before us on grant of certificates of appealability (COAs) by the district court as follows:

1. "The district court granted Caldwell a COA to this court on whether the district court erred in determining all issues relating to Caldwell's guilty plea and the deferred adjudication community supervision became final thirty days after the order was imposed, rather than thirty days after the formal adjudication of guilt";

2. "The district court granted Martinez a COA on whether his conviction became final after the expiration of the time for appealing his guilty plea and the deferred adjudication or if his conviction became final after the expiration of the time for appealing the state court's judgment adjudicating guilt"; and

3. "The district court granted a certificate of appealability to Beck on the issue of when a conviction and imposition of probationary sentence, which is subsequently revoked, is final for purposes of AEDPA's one year statute of limitation."

In my view, the majority errs in its answers to the COAs in Caldwell's and Martinez's appeals where it concludes that the initial order of deferred adjudication by the state trial court

constitutes a final judgment that starts the running of the one-year statute of limitation under AEDPA's § 2244(d). *See* 28 U.S.C. §2244(d). In my view, the majority is correct in concluding as to Beck that the judgment of conviction based on the jury verdict and the fixing of Beck's sentence, even though that sentence was probated pursuant to the jury recommendation, constitutes a final judgment that starts the running of the one-year statute of limitations under § 2244(d).

The two processes available under Texas statutory provisions, i.e., deferred adjudication on the one hand and probating the sentence on the other hand, are separate and distinct processes intended to serve separate and distinct purposes. In my view, deferred adjudication under Texas law is a process intended to give selected offenders an opportunity to avoid the stigma inherent in the entry of a judgment of guilt for a felony offense by postponing the actual determination of guilty for a period of years during which a defendant who complies with the conditions specified by the sentencing judge during that term can ultimately receive a dismissal of the indictment or information against him. *See Ex parte Laday*, 594 S.W.2d 102, 104 (Tex. Ct. Crim. App. 1980). If, however, the defendant fails to comply with the conditions of the deferred adjudication term, a judge can revoke the term of deferred adjudication, enter an order adjudicating the defendant's guilt, and fix the sentence to be served by the defendant. *See Dahlkoetter*

*v. State*, 628 S.W. 2d 255, 257-58 (Tex. Ct. App. 1982). Straight probation of a sentence on the other hand occurs only after a defendant has been adjudicated guilty of an offense and his sentence has been fixed, but the sentencing judge, either upon his own recommendation or upon a recommendation by the jury, permits the defendant to serve his sentence on probation without actual incarceration.

There are two absolute essentials to a final judgment in a criminal case: first, a determination of guilt or the absence of guilt and second, if the defendant is found guilty, a sentence imposing a fine or requiring the defendant to serve time in prison as punishment for that crime. *See Hurley v. State*, 130 S.W. 3d 501, 505 (Tex. App. – Dallas 2004, no pet.h) In the circumstance of a deferred adjudication, these two essential elements are not determined at the time of the initial order for deferred adjudication, but are instead determined at some later time if, as, and when the defendant on deferred adjudication violates a condition of that deferred adjudication. *See* TEX. CODE CRIM. PROC. art. 42.12 § 5(a); *Hurley*, 130 S.W. 3d at 505-06. In the case of a defendant whose sentence is probated, the two essentials of determination of guilt and determination of the punishment for the crime have been determined, but for reasons separate and distinct from his guilt or punishment, the defendant is given the opportunity to serve his sentence on probation instead of in

24

prison.

In further support of the distinction between these two processes under Texas law, I would point out that the term of years for deferred adjudication and the term of years to be served after adjudication are not the same. Caldwell and Martinez both received ten years of deferred adjudication but each got substantially longer terms of imprisonment as punishment when guilt was adjudicated. In the case of Becks's straight probation, however, the years of probation were the same as the years of punishment.

As the majority opinion points out, the issues raised by the COAs before us in these three appeals are issues of first impression before this Court and there is substantial conflict in the federal district courts as to the proper resolution of these issues. As indicated by footnote ten in the majority opinion, five previous district court opinions previously reached the same conclusion as I do that an initial order of deferred adjudication is not a final judgment. That conclusion was likewise reached by the district court in Martinez's case, so there have been six prior determinations by our district courts supporting my view. Footnote ten of the majority opinion indicates the three prior cases in which district courts have reached the same conclusion as the majority opinion; and to that we must add the conclusion of the district court in Caldwell's case, so the final count is six to four among the district courts favoring my view of the significance of deferred adjudication.

25

One final consideration that motivates me to dissent from the majority's determination that the initial order in a deferred adjudication process starts the one-year statute of limitation running is that most defendants and their counsel have little cause to worry about seeking appeal or habeas relief when the order entered by the state trial judge in effect says "I'm not going to adjudicate you guilty at this time, but give you a period of years to earn a dismissal of the charges against you by complying with the conditions of the deferred adjudication term I am defining for you."  I am aware, of course, of the abuses Congress intended to eliminate through the restrictions created by AEDPA, one of which is the new one-year statute of limitation in § 2244(d). I genuinely doubt, however, that Congress specifically addressed the circumstance of an order of deferred adjudication under Texas law when it fixed one of the dates for the beginning of the one-year statute of limitation as "the date on which the judgment became final".  The more likely date Congress contemplated is the date on which the state court actually adjudicates guilt and fixes the sentence in order to satisfy Congress's policy of having a limitation period and still avoid the inadvertent loss of the remedial benefits of the Great Writ, as occurred with Caldwell and Martinez in this appeal under the majority's approach.

I would reverse the judgments of the district court in *Caldwell* and *Martinez*, and affirm the judgment of the district

26

court in *Beck*.